**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol S. Fuller, ) | No. CV 07-0447-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff appeals the Social Security Commissioner's denial of disability benefits. Because the Commissioner's decision is supported by substantial evidence, the Court will affirm the decision.

**I.     Background**

On April 9, 2003, Plaintiff, Carol S. Fuller, protectively filed for disability insurance benefits ("DIB") under Title II of the Social Security Act. (R. 62-64). The application was denied initially and on reconsideration. (R. 31-34, 37-39). Thereafter, on October 21, 2004, Plaintiff protectively filed an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Social Security Act. (R. 424-26). The SSI application was escalated to the hearing level to be heard together with the DIB application. (R. 444). On May 16, 2005, the hearing was held before an Administrative Law Judge ("ALJ"). (R. 442-83). At the hearing, Plaintiff and a vocational expert testified. On July 25,

1  2005, the ALJ issued an unfavorable decision and denied Plaintiff's application. (R. 13-23).
2  Plaintiff filed a request for review, which the Social Security Appeals Council denied on
3  January 22, 2007. (R. 7-9). On February 27, 2007, Plaintiff filed the present appeal to this
4  Court.

5        Plaintiff was fifty-eight years old on August 25, 2001, the alleged onset date of her
6  disability. Plaintiff alleges disability based on back pain, depression, and anxiety. Plaintiff
7  has a twelfth grade education, and her past relevant work is as a telephone customer service
8  representative.

9        In August 2000, Plaintiff was diagnosed with mild lumbar spine problems: mild
10 thoracolumbar degenerative changes and minimal anterior spondylolisthesis deformity. (R.
11 229). Shortly thereafter, she began taking prescribed medication for the pain. In March
12 2001, Plaintiff underwent a discogram, which revealed a small right paracentral anterior
13 annular tear at L3-4 with a partial concordant pain response; a left lateral annular tear at L4-5
14 with a partial concordant pain response; and a ruptured disc with a posterior and anterior
15 annular tear allowing extravasation at L5-S1 with a concordant pain response. (R. 113-15).

16       During the next two months, Stuart Hetrick, D.O., evaluated Plaintiff on several
17 occasions. On March 28, 2001, Plaintiff told Dr. Hetrick that she had been evaluated for
18 depression but that a Dr. Ogesen "did not feel that the patient had depression and did not see
19 any reason for her to be on disability." (R. 308). On April 10, 2001, Dr. Hetrick reported
20 that an MRI of the lumbar spine revealed a disc bulge at the L5-S1 region. (R. 307). He
21 prescribed Oxycontin for Plaintiff's back pain, and on April 30, 2001, Plaintiff reported that
22 the pain was relatively well-controlled with this medication. (R. 306).

23       In September 2003, Plaintiff underwent a psychological consultative examination with
24 Wayne R. General, Ph.D. Dr. General opined that Plaintiff had a dysthymic disorder and an
25 anxiety disorder NOS. (R. 290). He indicated that Plaintiff's ability to deal with work
26 stresses and to maintain concentration was seriously limited. (R. 290, 292). Dr. General
27 further noted that Plaintiff was not in counseling and opined that therapy may help to
28

1  improve her emotional conditions more quickly. (R. 290). Finally, Dr. General concluded
2  that Plaintiff's prognosis of returning to the work force was fair. (*Id.*).

3  On November 25, 2003, Plaintiff again visited Dr. Hetrick. She reported that the
4  prescribed medication continued to control her pain. Dr. Hetrick examined her and found
5  "normal strength in the lower extremities." (R. 302). He found no "sensory deficits" to light
6  touch or pinprick, and that Plaintiff's deep tendon reflexes were "2+ and symmetrical at the
7  knees and ankles." (*Id.*). Dr. Hetrick concluded that Plaintiff most likely had "discogenic
8  pain without any significant radicular involvement." (*Id.*).

9  In January 2004, Harvey G. Thomas, M.D., diagnosed Plaintiff with lower back pain,
10 mild spinal stenosis, and iliac crest lesion. A physical examination revealed that Plaintiff's
11 range of motion was "fair as to flexion and extension of the spine"; that Plaintiff could "walk
12 on her heels and her toes"; and that her gait was "fairly normal and average paced." (R. 393).
13 Plaintiff's motor strength was 5/5 and sensation was intact in her upper and lower extremities.
14 (*Id.*). Finally, Dr. Thomas reviewed Plaintiff's MRI scan and concluded that it "did not
15 indicate any significant central canal stenosis." (*Id.*).

16 On January 28, 2004, Wayne F. Winn, M.D., a non-examining psychiatrist, opined
17 that Plaintiff had medically determinable impairments of dysthymic disorder and anxiety
18 disorder. (R. 334). He determined, however, that neither condition was severe because there
19 was "no evidence of ongoing problems" and because Dr. General's report, the one
20 consultative psychological report in the record at the time, "did not indicate a severe
21 impairment." (R. 334, 346).

22 On October 29, 2004, Dr. Hetrick discussed back surgery with Plaintiff, but Plaintiff
23 stated that she was "unwilling" to pursue that option unless "the pain becomes more severe."
24 (R. 377).

25 On May 5, 2005, Mary E. Merkel, M.D., examined Plaintiff for back pain Plaintiff
26 described as "debilitating." (R. 420). Plaintiff told Dr. Merkel that she was in severe back
27 pain constantly, but Dr. Merkel observed that Plaintiff was "in no discomfort" during the
28 examination. (R. 421). Plaintiff could walk on her toes and heels and squat and rise without

1  difficulty. (*Id.*). Her motor strength was 5/5; her sensation was intact to pinprick; her deep
2  tendon reflexes were 2+ and symmetric; and her straight leg raise was negative. (*Id.*). Dr.
3  Merkel reported that she could not explain Plaintiff's claims of debilitating pain on the basis
4  of her symptoms and MRI findings alone. (*Id.*).

5  On May 10, 2005, David Minor, D.O., filled out a residual functional capacity
6  questionnaire concerning Plaintiff. Dr. Minor had previously examined Plaintiff three or four
7  times and opined that Plaintiff had lumbar disc disease with left radiculitis. He indicated that
8  Plaintiff had severe back pain and no ability to maintain concentration, and that, as a result,
9  Plaintiff was incapable of working even "low stress" jobs.

10  The ALJ gave more credibility to the opinions of other examining and non-examining
11  physicians than he did to treating physician Dr. Minor and examining physician Dr. General.
12  The ALJ found that the objective medical evidence did not support Dr. Minor's and Dr.
13  General's opinions of the severity of Plaintiff's impairments, and the ALJ discredited
14  Plaintiff's subjective symptom testimony on which those opinions were based. The ALJ
15  determined that Plaintiff was still able to engage in substantial employment and on that basis
16  found that Plaintiff was not disabled.

## II. Standard of Review

A district court

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations and internal quotation marks omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

**III.    Discussion**

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

*Id.* § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1.  First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2.  If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in *id.* § 404.1520(a)(4)(ii)). If the claimant does not have a severe impairment, the claimant is not disabled.

1       3. Having found a severe impairment, the ALJ next determines whether the
2 impairment "meets or equals" one of the impairments listed in the regulations. *Id.* §
3 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not,
4 before proceeding to the next step, the ALJ will make a finding regarding the claimant's
5 "residual functional capacity based on all the relevant medical and other evidence in [the]
6 record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" is the most he can
7 do despite all his impairments, including those that are not severe, and any related symptoms.
8 *Id.* §404.1545(a)(1).

9       4. At step four, the ALJ determines whether, despite the impairments, the claimant
10 can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination,
11 the ALJ compares its "residual functional capacity assessment . . . with the physical and
12 mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant
13 can still perform the kind of work he previously engaged in, the claimant is not disabled.
14 Otherwise, the ALJ proceeds to the final step.

15       5. At the final step, the ALJ determines whether the claimant "can make an
16 adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In
17 making this determination, the ALJ considers the claimant's "residual functional capacity"
18 and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can
19 perform other work, he is not disabled. If the claimant cannot perform other work, he will
20 be found disabled. As previously noted, the Commissioner has the burden of proving the
21 claimant can perform other work. *Reddick*, 157 F.3d at 721.

22       In this case, the ALJ concluded that Plaintiff was not disabled at step four of the
23 sequential process. The ALJ found that Plaintiff's mental impairment was non-severe but
24 that her back disorder and asthma constituted severe physical impairments. He further found
25 that these physical impairments, while "severe" within the meaning of the regulations, were
26 "not 'severe' enough to meet or equal, either singly or in combination, one of the impairments
27 listed in [the regulations]." (R. 18). Finally, the ALJ found that, despite all her physical and
28 mental impairments, Plaintiff was able to perform "light work," including "her past relevant

- 6 -

1  work as a telephone customer service representative." (R. 21). Moreover, the ALJ found
2  that Plaintiff could perform other comparable work in the national economy. Thus, the ALJ
3  concluded that Plaintiff was not disabled.
4        On appeal, Plaintiff contends that the ALJ's findings that Plaintiff can perform her past
5  relevant work and other light work in the national economy are not supported by substantial
6  evidence. Plaintiff challenges the ALJ's decision to give only little probative value to the
7  opinions of treating physician Dr. Minor and examining physician Dr. General. Plaintiff also
8  argues that the ALJ improperly discredited her subjective symptom testimony. The Court
9  reviews each of these contentions in turn.
10     *A. Physician Opinion*s
11         1. Dr. Minor
12       Plaintiff first argues that the ALJ erred in failing to give controlling weight to the
13 opinion of her treating physician, Dr. Minor. Defendant responds that the ALJ properly gave
14 specific reasons, supported by substantial evidence in the record, for rejecting Dr. Minor's
15 opinion.
16       A treating physician's opinion is typically entitled to greater weight because the
17 treating physician "'is employed to cure and has a greater opportunity to know and observe
18 the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)
19 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). However, an ALJ "need
20 not give controlling weight to the opinion of a treating physician." *Batson v. Comm'r of Soc.*
21 *Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). Such an opinion is not conclusive and
22 may be disregarded whether or not it is contradicted. *Magallanes*, 881 F.2d at 751.
23       In this case, the parties agree that Dr. Minor's opinion was contradicted. In such
24 instances, an ALJ can reject the treating physician's opinion "if the ALJ makes 'findings
25 setting forth specific, legitimate reasons for doing so that are based on substantial evidence
26 in the record.'" *Thomas*, 278 F.3d at 957 (quoting *Magallanes*, 881 F.2d at 751). "'When
27 there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the
28

conflict.'" *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (quoting *Matney*, 981 F.2d at 1019).

The ALJ gave little probative value to Dr. Minor's opinion that Plaintiff was unable to work for several reasons. First, with regard to the severity of Plaintiff's physical impairment, Dr. Minor based his opinion on certain MRI results. However, Dr. Merkel, a Board-certified physical medicine and rehabilitation specialist, examined Plaintiff just five days before Dr. Minor rendered his opinion and concluded that Plaintiff's subjective complaints of pain could not be objectively verified by those results. (R. 20, 421). The ALJ gave more credibility to the specialist than he did to Dr. Minor, who was only a family practitioner. Second, Dr. Minor's opinion regarding Plaintiff's mental impairment was based on Plaintiff's subjective complaints. The ALJ, however, discredited Plaintiff's subjective complaints because, among other reasons discussed *infra*, Plaintiff had not sought counseling for her mental impairments. Further, as just noted, Dr. Minor's specialty was family practice, not psychology or psychiatry. Finally, the ALJ found that Plaintiff's activity level was inconsistent with an inability to work. After her alleged onset date, Plaintiff was still able to make her own meals "once in a while," do her own laundry and shopping, and occasionally attend church, all without a cane or walker. (Tr. 21). She also continued to travel. She flew to Ireland, where she stayed in a hostel and visited "a lot of different places," and also drove from Arizona to California in a rental car.

The Court finds that the ALJ properly gave specific and legitimate reasons, based on substantial evidence in the record, for discounting the opinion of treating physician Dr. Minor. Dr. Minor was not a specialist in the medical fields at issue, the objective medical evidence did not support his opinion, and Plaintiff's activity level contradicted it.

### 2. Dr. General

Plaintiff next argues that the ALJ erroneously rejected examining physician Dr. General's opinion that Plaintiff had severe mental impairments.[1] Plaintiff's argument seems to be that had the ALJ embraced Dr. General's opinion and found a severe mental impairment, then the ALJ would have concluded that Plaintiff was unable to work and was thus disabled. Defendants respond that the ALJ's decision to discount Dr. General's opinion is supported by substantial evidence in the record.

The ALJ is tasked with determining credibility and resolving conflicts in medical testimony, not this Court. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "The ALJ need not accept an opinion of a physician . . . if it is conclusionary and brief and is unsupported by clinical findings." *Matney*, 981 F.2d at 1020. When "the evidence is susceptible to more than one rational interpretation," this Court "must uphold the ALJ's decision." *Andrews*, 53 F.3d at 1039-40.

Dr. General's opinion was contradicted by several non-examining doctors. Dr. Winn, in particular, concluded that Plaintiff's mental impairments were not severe because there was "no evidence of ongoing problems," a conclusion that was consistent with Dr. General's report. In his report, Dr. General noted that Plaintiff's conditions could improve, and that counseling might augment that improvement, but that Plaintiff had failed to seek counseling. Further, Dr. General's opinion contradicted Plaintiff's own statements. Plaintiff told Dr. General that she felt capable of dealing with work-related stresses, being punctual, and following instructions on the job.

Substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were non-severe. At best, the Court finds that the evidence regarding the

---

[1] Plaintiff also argues that in addressing her mental impairments, the ALJ addressed her depression only and not her anxiety. However, a cursory review of the ALJ's decision makes clear that the ALJ's use of the phrase "affective disorder" was meant to encompass both depression and anxiety. To illustrate, in the sentence immediately preceding the ALJ's finding of a non-severe "affective disorder," the ALJ stated that "there is no indication in the file that [Plaintiff] was still taking medication for anxiety or depression." (Tr. 20).

- 9 -

1  severity of Plaintiff's mental impairments is susceptible to more than one rational
2  interpretation.  Thus, the Court must uphold the ALJ's decision in this regard.[2]

### B. *Plaintiff's Credibility*

Plaintiff next argues that the ALJ failed to properly address her credibility because he failed to meet the specific factor analysis required by Social Security Ruling ("SSR") 96-7p and because his conclusions are contrary to the record as a whole. Defendant responds that the ALJ's credibility determination was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony and was thus proper.

The parties agree that Plaintiff had an objectively verifiable medical impairment, and the ALJ did not cite any evidence of malingering. Under these circumstances, the ALJ cannot reject the claimant's testimony of the severity of symptoms unless the ALJ gives specific, clear, and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284.

In determining whether the claimant's symptom testimony is credible, the ALJ must consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities." *Id.* The ALJ may also consider the claimant's reputation for truthfulness or untruthfulness; any prior

---

[2] Even if the Court were to second-guess the ALJ and credit Dr. General's opinion, the ALJ's decision was not inconsistent with that opinion. Dr. General never opined that Plaintiff's affective disorder rendered her unable to work.

- 10 -

1 inconsistent or less than candid statements; and any unexplained failure to seek or follow a course of treatment. *Id.*

Here, the ALJ properly considered these factors in finding that Plaintiff's testimony of the degree of her impairments and limitations was not credible. To begin with, the ALJ found that Plaintiff's allegations of the severity of her pain were not supported by objective medical evidence, by her activity level, or by her own statements. Plaintiff stopped working because her employer offered her a buy-out, not because of her health. After taking early retirement in August 2001, Plaintiff continued to travel. (The Court has already noted Plaintiff's trip to Ireland and her drive from Arizona to California.) Plaintiff told Dr. Hetrick in April 2001 and November 2003 that medication had helped control her pain. In October 2004, Dr. Hetrick offered to perform back surgery on Plaintiff, but Plaintiff said she was unwilling to consider that option unless the pain became more severe. Finally, in May 2005, Dr. Merkel stated that Plaintiff's MRI findings could not explain her complaints of debilitating pain.

The ALJ also found that Plaintiff's daily activities and certain aggravating factors contradicted her subjective symptom testimony. Plaintiff made her own meals "once in a while," did her own laundry and shopping, and occasionally attended church. She also read. She did not use an assistive device to ambulate. She continued smoking even after being advised to quit. And she never sought counseling for her allegedly severe emotional problems, even after Dr. General stated that it might improve her condition.

The ALJ made specific findings, based on substantial evidence in the record, that support his credibility determination. Plaintiff disputes many of the ALJ's factual findings, but the record is, at best, ambiguous on those disputed points. The ALJ, not this Court, is responsible for resolving ambiguities in the evidence. *Andrews*, 53 F.3d at 1039. Therefore, the Court finds that the ALJ properly discredited Plaintiff's subjective complaints about the severity of her symptoms.

- 11 -

## IV. Conclusion

Substantial evidence supports the ALJ's decision to deny disability benefits in this case. The ALJ set forth specific and legitimate reasons for rejecting the testimony of Dr. Minor and Dr. General and properly discredited Plaintiff's subjective testimony of her symptoms. Consequently, the ALJ's decision is affirmed.

**IT IS ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. # 18), which was mistakenly docketed as a mere response to Plaintiff's motion, is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 12) is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 31st day of March, 2008.

_____
James A. Teilborg
United States District Judge